UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AMERICAN CIVIL LIBERTIES UNION OF SOUTHERN CALIFORNIA**<br><br>1313 W. Eighth Street<br>Los Angeles, CA 90017<br><br>**Plaintiff,**<br><br>**v.**<br><br>**UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES**<br><br>20 Massachusetts Avenue, NW<br>Washington, DC 20528<br><br>**Defendant.** | **No. 13-cv-861**<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>Freedom of Information Act,<br>5 U.S.C. § 552 |

**INTRODUCTION**

1. Plaintiff, the American Civil Liberties Union of Southern California ("ACLU/SC"), brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, against the United States Citizenship and Immigration Services ("USCIS") to compel USCIS to produce records responsive to the ACLU/SC's FOIA request.

2. The ACLU/SC filed a FOIA request with USCIS seeking information regarding a USCIS policy—the "Controlled Application Review and Resolution Program" ("CARRP")—that subjects certain immigration benefit applicants to disparate treatment and results in lengthy processing delays, burdensome investigations, and apparently pretextual denials of requested immigration benefits. This disparate treatment disproportionately affects applicants who are Muslim or are from predominately Muslim countries.

3. Although nearly one year has elapsed since the ACLU/SC submitted its FOIA request, USCIS has improperly withheld responsive records, failed to produce reasonably segregable portions of withheld records, inadequately searched for requested records, and failed to comply with FOIA's statutory deadlines. As a result, more than one half of the ACLU/SC's FOIA request remains unanswered.

4. USCIS has largely prevented the public from learning about CARRP. As Congress considers reforming our national immigration system, the public has a compelling need to understand how CARRP prevents law abiding individuals from obtaining the immigration benefits to which they appear to be statutorily entitled.

5. Through this lawsuit, the ACLU/SC seeks to obtain the documents it first sought nearly a year ago; to vindicate the public's right "to know what their Government is up to," *NARA v. Favish*, 541 U.S. 157, 171 (2004) (internal quotations and citations omitted); and to hold the Administration to its promise of transparency.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

7. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

## PARTIES

8. Plaintiff ACLU/SC is a non-profit, nonpartisan organization of over 40,000 members dedicated to defending the civil rights and liberties granted by the United States Constitution and the Bill of Rights. The ACLU/SC's work focuses on the First Amendment, equal protection, due process, privacy, and furthering civil rights for disadvantaged groups. The ACLU/SC has a long-standing commitment to defending and advancing immigrants' rights

through advocacy, litigation, and public education, and has developed expertise in the area of naturalization and other immigration benefits.

9. The ACLU/SC is committed to principles of government transparency and accountability, and works to ensure that the American public is informed about the conduct of its government in matters that affect civil liberties and human rights. A significant aspect of the ACLU/SC's advocacy and public education work is the dissemination of information to the public. The ACLU/SC frequently shares information with the news media, and its staff members serve as regular commentators in local and national print, radio, television, and the internet news media. The ACLU/SC also disseminates information to the public through its website (www.aclu-sc.org), social media sites (such as Facebook, Twitter, and blogs), weekly action alert emails to its members, and video and audio pieces about civil liberties issues. Further, the ACLU/SC issues reports documenting civil liberties issues; distributes regular newsletters to its members; and produces "Know Your Rights" documents, briefing papers, fact sheets, and other educational and informational materials. The ACLU/SC's staff members regularly conduct "Know Your Rights" workshops for members of the public; speak on civil liberties issues at public events and conferences; and testify before local, state, and federal legislative bodies. As part of its public outreach, the ACLU/SC also regularly conducts workshops at mosques and Muslim community centers throughout Southern California, during which staff members discuss issues and address questions from community members regarding access to naturalization and other immigration benefits.

10. Defendant USCIS is a component of the Department of Homeland Security and is responsible for overseeing lawful immigration to the United States. USCIS is an "agency"

within the meaning of 5 U.S.C. § 552(f)(1). USCIS has possession and control over the records the ACLU/SC seeks and is responsible for fulfilling the ACLU/SC's FOIA request.

## LEGAL FRAMEWORK
### The Freedom of Information Act

11. "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). Through access to government information, FOIA helps the public better understand the operations of the government, thereby enabling a vibrant and functioning democracy.

12. To this end, the FOIA statute, 5 U.S.C. § 552, requires agencies of the federal government to release requested records to the public, unless one or more statutory exemptions apply.

13. The FOIA statute requires an agency to make a reasonable search for responsive records. *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 371 (D.C. Cir. 1980).

14. An agency must respond to a FOIA request within twenty working days after receipt of a request, notifying the requester of the agency's determination whether or not to fulfill the request, providing the reasons for its determination, and informing the requester of his or her right to appeal the agency's determination to the agency head. 5 U.S.C. § 552(a)(6)(A)(i). Similarly, an agency must respond to an appeal of the agency's determination within twenty working days of its receipt. 5 U.S.C. § 552(a)(6)(A)(ii).

15. In "unusual circumstances," an agency may postpone its response to a FOIA request or appeal, but it must provide notice and "the date on which a determination is expected

to be dispatched." 5 U.S.C. § 552(a)(6)(B). "No such notice shall specify a date that would result in an extension for more than ten working days . . . ." *Id.*

16. The FOIA statute requires an agency to timely disclose all records responsive to a FOIA request that do not fall within nine narrowly-construed statutory exemptions. 5 U.S.C. § 552(a)(3)(A); § 552(b)(1)–(b)(9). If an agency claims a statutory exemption, the agency is obligated to provide any reasonably segregable portion of non-exempt information to the requester, to specify the amount of information withheld, and to identify the exemption under which the withholding is made. 5 U.S.C. § 552(b).

17. A FOIA requester is deemed to have exhausted his or her administrative remedies if an agency fails to comply with the statutory time limits for responding to a request. 5 U.S.C. § 552(a)(6)(C)(I). At that point, the requester may immediately file suit in federal court to obtain the requested documents. *Spannaus v. U.S. Dep't of Justice*, 824 F.2d 52, 58 (D.C. Cir. 1987).

18. A district court "has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B).

## FACTUAL ALLEGATIONS

### The ACLU/SC's Initial FOIA Request, And The Discovery Of CARRP

19. For nearly a decade, the ACLU/SC has worked to remove unlawful barriers to the ability of statutorily eligible lawful permanent residents to naturalize as U.S. citizens. Through this work, the ACLU/SC has witnessed USCIS repeatedly subject applicants from Muslim and predominantly Muslim countries to lengthy processing delays and other measures not applied to other groups seeking immigration benefits.

20. To gain insight into this apparently discriminatory treatment, the ACLU/SC submitted a FOIA request to USCIS's National Records Center, Los Angeles Field Office, San

Bernardino Field Office, and Santa Ana Field Office on June 16, 2010 seeking any naturalization policy information related to applicants from predominately Muslim countries (the "2010 Request"). One year later, in June 2011, USCIS responded to the 2010 Request, providing documents that, although heavily redacted, revealed the existence of CARRP and described the substantive details of the program.

21. Until this information was disclosed to the ACLU/SC, USCIS had not made any information about CARRP publicly available.

22. USCIS created CARRP to identify, process, and adjudicate cases involving "national security concerns." CARRP applies to all applications and petitions for immigration benefits processed by USCIS that convey immigrant or non-immigrant status.

23. Upon information and belief, Congress did not approve CARRP, and USCIS did not promulgate it in accordance with the Administrative Procedure Act's notice and comment rulemaking procedure.

24. CARRP establishes criteria USCIS officers must follow when determining whether an applicant raises a "national security concern." CARRP's criteria appear to be extremely broad. According to USCIS memoranda, indicators of national security concerns can include, but are not limited to, "unusual travel patterns and travel through or residence in areas of known terrorist activity," "large scale transfers or receipt of funds," or even simply "proficiency in a particular technical skill."

25. When a "concern" arises, CARRP directs USCIS to vet the "concern" through internal records checks and then through communication with the law enforcement community and other entities or agencies in possession of relevant information.

26. CARRP expressly allows law enforcement agencies to affect USCIS's "decision to grant or deny a benefit, or timing of the decision." Law enforcement agencies possessing national security information may also request that an application be "held in abeyance for 180 days or until the investigation is complete, whichever is sooner." "The withholding of adjudication," however, "may be extended further" if the case remains "open."

27. With limited exceptions, CARRP generally prevents USCIS agents from approving an application for an immigration benefit so long as it determines that a "national security concern" exists. If USCIS cannot find a basis to deny the application, CARRP permits USCIS to delay adjudication of the application indefinitely.

28. Upon information and belief, the resulting indefinite delays often result in USCIS violating its statutory obligations to process applications within certain enumerated time periods.

**The ACLU/SC's 2012 FOIA Request**

29. USCIS's incomplete and highly redacted response to the 2010 Request raised more questions than answers about CARRP, including, for example, how CARRP is implemented, how officers are trained, what the criteria used for identifying "national security concerns" might be, and how many people CARRP affects.

30. On May 17, 2012, the ACLU/SC sent USCIS a second, more targeted FOIA request (the "2012 Request"). The 2012 Request sought specific information and documents regarding USCIS policies governing the adjudication of applications that ostensibly raise national security concerns, particularly information related to CARRP.

31. The 2012 Request specifically identified, by name and by date, a number of documents that had been mentioned or discussed—but not disclosed or produced—in USCIS's response to the 2010 Request. The 2012 Request also sought ten different categories of statistical information regarding applicants affected by CARRP.

32. In a May 31, 2012 letter, USCIS acknowledged receipt of the 2012 Request, agreed to respond to the request, but noted that the request has been placed on USCIS's complex track. The letter also stated that "[t]he statutory time limits for processing [the] request cannot be met because of unusual circumstances," and that it would "be necessary to extend the time limits beyond ten working days due to the need to search for and collect the requested records."

33. In response, on July 20, 2012, the ACLU/SC proposed an alternative time frame for USCIS to process the request, in accordance with 5 U.S.C. § 552(a)(6)(B)(ii).

34. By email on July 23, 2012, USCIS rejected the ACLU/SC's proposal without offering any alternative.

35. On September 6, 2012—more than three months after USCIS acknowledged receipt of the 2012 Request—USCIS reported that it had "identified 389 pages that are responsive." USCIS, however, produced only 163 pages "in their entirety" and 97 pages "in part." USCIS withheld "129 pages in full."

36. In support of these withholdings, USCIS stated, without elaboration, that the FOIA exemptions enumerated at 5 U.S.C. § 552(b)(5), (b)(7)(C) and (b)(7)(E) were "applicable." USCIS offered no further details, failed to provide an itemized list indicating the material withheld, failed to reasonably segregate non-exempt material, and left the ACLU/SC with no way to verify whether the withholdings were appropriate.

37. For example, the ACLU/SC's request No. 1 sought "[t]he Operational Guidance, which implements the 2008 "Policy for Vetting and Adjudicating Cases with National Security Concerns." In response, USCIS produced the cover sheet to a document titled "Operational Guidance for Vetting and Adjudicating Cases with National Security Concerns," followed by forty-nine pages that, save for the header and footer, are almost completely redacted.

38. USCIS also ignored, without providing any justification, every one of the ACLU/SC's requests for documents or records containing statistical information and a number of requests for documents specifically identified by name and by date.

39. For example, USCIS failed to produce materials responsive to the ACLU/SC's request No. 8, which specifically sought USCIS's "IBIS Standard Operating Procedure." The IBIS Standard Operating Procedure is referenced by name on page 109 of USCIS's May 21, 2004 memorandum entitled "New National Security-Related IBIS Procedures," which USCIS produced in response to the ACLU/SC's 2010 Request. USCIS provided no justification for its failure to produce this document.

40. Upon information and belief, USCIS's insufficient search has resulted in its failure to produce other responsive documents.

41. On November 2, 2012, the ACLU/SC sent an administrative appeal letter to USCIS challenging the sufficiency of USCIS's production and application of FOIA's statutory exemptions. The appeal requested that USCIS search more thoroughly for responsive documents and reevaluate the statutory exemptions claimed for the withholdings. Where the withholdings were deemed proper, the ACLU/SC requested that USCIS create a *Vaughn* index to allow the ACLU/SC to evaluate the claims of statutory exemption.

42. By letter dated November 8, 2012, USCIS acknowledged receipt of the appeal and stated that it would "make every effort to respond to [the] request as quickly as possible," but advised that USCIS would have to "contact the National Record Center and obtain the background material on [the] request."

43. More than three months later, by letter dated February 19, 2013, USCIS stated that it would remand the 2012 Request to its National Records Center "for a further search," and

noted that "[i]f records are located, those that can be released will be made available to you directly by that office."

44. By letter dated February 28, 2013, USCIS's National Records Center confirmed receipt of the remand, but again claimed that "unusual circumstances . . . necess[itated] . . . extend[ing] the time limits beyond ten working days due to the need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request."

45. On April 2, 2013, the ACLU/SC sent a second administrative appeal letter to USCIS challenging USCIS's ongoing and unreasonable delay in responding adequately to the ACLU/SC's request for information. The second administrative appeal letter expressly preserved the arguments in the ACLU/SC's initial appeal letter regarding the adequacy of USCIS's initial search, the sufficiency of USCIS's production, and USCIS's application of statutory exemptions.

46. On April 5, 2013, USCIS responded to the ACLU/SC's appeal letter, stating that the appeal letter was improper because "[o]ur function is limited to the review of the records that have been denied pursuant to the Freedom of Information Act or the Privacy Act."

47. USCIS's April 5, 2013 letter also stated "[i]f you are dissatisfied with our action on your appeal, you may seek judicial review in accordance with 5 U.S.C. § 552(a)(4)(B)."

48. USCIS's April 5, 2013 letter did not inform the ACLU/SC of the scope of the documents that it will produce, nor did it inform the ACLU/SC of the scope of the documents it plans to withhold. Accordingly, USCIS has failed to make a "determination" within the statutory time period. *See Citizens for Responsibility and Ethics in Wash. v. Fed. Elections Comm'n*, 711 F.3d 180, 182 (D.C. Cir. 2013).

49. USCIS had, at most, thirty working days from the date of the remand to make a determination on the ACLU/SC's remanded FOIA request. That time expired on April 11, 2013.

50. As of June 7, 2013, USCIS has not produced the requested documents or made a determination on the ACLU/SC's 2012 Request. The ACLU/SC has therefore exhausted its administrative remedies.

## FIRST CAUSE OF ACTION
### Violation Of 5 U.S.C. § 552(a)(3) For Failure To Conduct An Adequate Search For Responsive Records

51. The ACLU/SC realleges and incorporates by reference paragraphs 1–51.

52. On May 17, 2012, the ACLU/SC properly submitted a FOIA request to USCIS.

53. On September 6, 2012, USCIS produced 163 pages in their entirety, 97 pages in part, and withheld 129 pages in full.

54. USCIS possesses a number of responsive documents, specifically identified and sought by the ACLU/SC in its 2012 FOIA request, that it failed to produce.

55. Upon information and belief, USCIS's insufficient search has resulted in its failure to produce other responsive documents.

56. USCIS also failed to respond to the ACLU/SC's ten separate requests for documents or records containing statistical information, and failed to provide any justification for doing so.

57. Accordingly, USCIS's failure to search adequately for and produce the materials requested by the ACLU/SC violates 5 U.S.C. § 552(a)(3), and corresponding USCIS regulations.

## SECOND CAUSE OF ACTION
### Violation Of 5 U.S.C. § 552(b) For Improperly Relying On FOIA Exemptions And Failing To Provide Reasonably Segregable Portions Of Withheld Documents

58. The ACLU/SC realleges and incorporates by reference paragraphs 1–58.

59. On May 17, 2012, the ACLU/SC properly submitted a FOIA request to USCIS.

60. On September 6, 2012, USCIS produced 163 pages in their entirety, 97 pages in part, and withheld 129 pages in full.

61. USCIS improperly relied on exemptions under 5 U.S.C. §§ 552(b)(5), (b)(7)(C) and (b)(7)(E) in withholding and redacting responsive records.

62. USCIS also failed to reasonably segregate exempt material from non-exempt material.

63. Accordingly, USCIS's withholding of responsive documents violates 5 U.S.C. § 552(b), and corresponding USCIS regulations.

**THIRD CAUSE OF ACTION**
**Violation Of 5 U.S.C. § 552(a)(6)(A) For**
**Failure To Comply With Statutory Deadlines**

64. The ACLU/SC realleges and incorporates by reference paragraphs 1–64.

65. Under 5 U.S.C. §§ 552(a)(6)(A)(i) and (a)(6)(B), USCIS had, at most, thirty working days from the date of the remand to make a determination on the ACLU/SC's remanded FOIA request.

66. That time expired on April 11, 2013.

67. As of June 7, 2013, USCIS has not produced the requested documents or otherwise responded adequately to the ACLU/SC's 2012 Request.

68. Accordingly, USCIS's failure to comply with its statutory deadlines violates 5 U.S.C. § 552(a)(6), and corresponding USCIS regulations.

**REQUESTS FOR RELIEF**

WHEREFORE, the ACLU/SC respectfully requests that the Court:

(A) Declare that USCIS's withholding of the requested records is unlawful;

(B) Order USCIS to search for and make the requested records available to the ACLU/SC;

(C) Award the ACLU/SC its costs and reasonable attorneys' fees pursuant to 5 U.S.C. § 552(a)(4)(E); and

(D) Grant all other appropriate relief.

Dated: June 7, 2013

Respectfully submitted,

*/s/ Edward Wenger*
Edward M. Wenger

James E. Gauch (D.C. Bar. No. 447839)
Edward M. Wenger (D.C. Bar No. 1001704)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001-2113
Telephone: (202) 879-3939
Facsimile: (202) 626-1700
Email: jegauch@jonesday.com
Email: emwenger@jonesday.com

Arthur B. Spitzer (D.C. Bar No. 235960)
American Civil Liberties Union
of the Nation's Capital
4301 Connecticut Avenue, N.W., Suite 434
Washington, D.C. 20008
Telephone: (202) 457-0800
Facsimile: (202) 457-0805
Email: artspitzer@aclu-nca.org

Ahilan Arulanantham (CA Bar No. 237841)
Jennifer Pasquarella (CA Bar. No. 263241)
American Civil Liberties Union
of Southern California
1313 W. 8th Street
Los Angeles, CA 90026
Telephone: (213) 977-5236
Facsimile: (213) 417-2236
Email: aarulanantham@aclu-sc.org
Email: jpasquarella@aclu-sc.org

*Counsel for Plaintiff*
*American Civil Liberties Union*
*of Southern California*