## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF SOUTHERN CALIFORNIA, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Civil Action No. 13-cv-861 (TSC) |
| UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, ) ) ) | |
| Defendant. ) ) | |

## MEMORANDUM OPINION

Before the court are the parties' cross-motions for summary judgment.  Upon

consideration of the motions, the responses and replies thereto, and for the following reasons, the

Court grants in part and denies in part both motions.

### I.       BACKGROUND

The American Civil Liberties Union of Southern California ("ACLU") brought this

action under the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552 *et seq.*, challenging

United States Citizenship and Immigration Services' ("USCIS") search and withholdings in

response to ACLU's May 17, 2012 FOIA request.  That request broadly sought two categories of

information: records relating to or concerning "policies for the identification, vetting and

adjudication of immigration benefits applications with national security concerns," and statistical

information related to the processing of benefits applications.  (Pl. Cross Mot. Summ. J. at 2-3).

Underlying ACLU's request was a concern "that certain immigrants—including Muslim, Arab,

Middle Eastern and South Asian immigrants—are treated differently than other applicants in

their efforts to obtain naturalization and other important immigration benefits."  (Eggleston Decl.

1

Ex. A). This differential treatment is apparently institutionalized through the Controlled

Application Review and Resolution Program, or CARPP.

In response to ACLU's request, USCIS originally identified 389 responsive pages,

releasing some in whole or in part, and withholding others.  (Eggleston Decl. ¶ 16).  After ACLU

appealed the decision, the agency remanded the request for further processing.  Having not

received a timely response, ACLU then filed this lawsuit.  Judge Ketanji Brown Jackson, who

was then assigned to the case, ordered USCIS to complete its processing of the request by a date

certain, which resulted in numerous rolling productions over the course of a year.  (*Id.* at ¶ 26).

A total of 1,503 have now been processed and reprocessed, with varying levels of redactions.

(Def. Mot. S.J. at 2). Four issues are currently before the court: the application of Exemption

7(E),[1] the adequacy of the agency's search, the scope of the agency's search, and whether the

agency has released all segregable portions of the records.

## II.  LEGAL STANDARD

### a.  Motion for Summary Judgment

Summary judgment may be granted if "the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Holcomb v.

Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006).  Summary judgment may be rendered on a "claim or

defense . . . or [a] part of each claim or defense."  Fed. R. Civ. P. 56(a).  "A party asserting that a

fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of

materials in the record."  Fed. R. Civ. P. 56(c)(1)(A).  "A fact is 'material' if a dispute over it

might affect the outcome of a suit under the governing law; factual disputes that are 'irrelevant or

---

[1] ACLU does not challenge USCIS' withholdings based on Exemptions 5, 6, or 7(C).

unnecessary' do not affect the summary judgment determination." *Holcomb*, 433 F.3d at 895 (quoting *Liberty Lobby*, 477 U.S. at 248). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.* The party seeking summary judgment "bears the heavy burden of establishing that the merits of his case are so clear that expedited action is justified." *Taxpayers Watchdog, Inc., v. Stanley*, 819 F.2d 294, 297 (D.C. Cir. 1987).

In considering a motion for summary judgment, "the evidence of the nonmovant[s] is to be believed, and all justifiable inferences are to be drawn in [their] favor." *Liberty Lobby*, 477 U.S. at 255; *see also Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 850 (D.C. Cir. 2006). The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials, and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The nonmovant is required to provide evidence that would permit a reasonable jury to find in his favor. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987).

      b.  FOIA

"FOIA provides a 'statutory right of public access to documents and records' held by federal government agencies." *Citizens for Responsibility & Ethics in Washington v. DOJ*, 602 F. Supp. 2d 121, 123 (D.D.C. 2009) (quoting *Pratt v. Webster*, 673 F.2d 408, 413 (D.C. Cir. 1982)). FOIA requires that federal agencies comply with requests to make their records available to the public, unless such "information is exempted under clearly delineated statutory language." *Id.* (internal quotation marks omitted); *see also* 5 U.S.C. § 552(a), (b).

3

"'FOIA cases typically and appropriately are decided on motions for summary judgment.'" *Georgacarakos v. FBI*, 908 F. Supp. 2d 176, 180 (D.D.C. 2012) (quoting *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)). The district court conducts a *de novo* review of the government's decision to withhold requested documents under any of FOIA's specific statutory exemptions. 5 U.S.C. § 552(a)(4)(B). Thus, the agency bears the burden of showing that nondisclosed, requested material falls within a stated exemption. *Petroleum Info. Corp. v. U.S. Dep't of the Interior*, 976 F.2d 1429, 1433 (D.C. Cir. 1992) (citing 5 U.S.C. § 552(a)(4)(B)); *Liberty Lobby*, 477 U.S. at 254. In cases concerning the applicability of exemptions and the adequacy of an agency's search efforts, summary judgment may be based solely on information provided in the agency's supporting declarations. *See, e.g.*, *ACLU v. U.S. Dept. of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011); *Students Against Genocide v. Dept. of State*, 257 F.3d 828, 838 (D.C. Cir. 2001). "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption," and "is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *ACLU*, 628 F.3d at 619. "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Id.* (internal quotation marks omitted) (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)). However, a motion for summary judgment should be granted in favor of the FOIA requester "[w]hen an agency seeks to protect material which, even on the agency's version of the facts, falls outside the proffered exemption". *Coldiron v. DOJ*, 310 F. Supp. 2d 44, 48 (D.D.C. 2004) (quoting *Petroleum Info. Corp.*, 976 F.2d at 1433).

The FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b).  More specifically, "[i]t has long been a rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions."  *Mead Data Central, Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).  In order to withhold a file or portion thereof under a FOIA exemption, "the Government must make that showing in its *Vaughn* index and in such affidavits as it may submit therewith." *Kimberlin v. DOJ*, 139 F.3d 944, 950 (D.C. Cir. 1998).  "The index required by *Vaughn* is designed to permit adequate adversary testing of the agency's claimed right to an exemption." *Nat'l Treasury Employees Union v. U.S. Customs Serv*., 802 F.2d 525, 527 (D.C. Cir. 1986).

## III.   ANALYSIS

### a.   USCIS's Withholding of Records Pursuant to Exemption 7(E)

The FOIA contains nine exemptions on which agencies may rely to withhold documents. Under Exemption 7, the Act "does not apply" to "records or information compiled for law enforcement purposes" if they fall into one of six enumerated categories.  5 U.S.C. § 552(b)(7). The only category at issue here is subsection (E), which allows an agency to withhold records if they "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." *Id.* § 552(b)(7)(E).

The parties raise two threshold issues.  The first involves the proper construction of Exemption 7(E), which states that an agency may withhold information that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose

guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C § 552(b)(7)(E).  The parties originally disputed whether the phrase "if such disclosure could reasonably be expected to risk circumvention of the law" modifies only "would disclose *guidelines* for law enforcement investigations or prosecutions" or also modifies "would disclose *techniques and procedures* for law enforcement investigations or prosecutions."  Some courts have held that circumvention of the law is only required for guidelines for investigations, making techniques and procedures categorically exempt under 7(E).  *See, e.g.*, *McRae v. U.S. Dep't of Justice*, 869 F. Supp. 2d 151, 168-69 (D.D.C. 2012).  Other courts have held that a showing of risk of circumvention of the law is required for both types of records.  *See, e.g.*, *Muslim Advocates v. U.S. Dep't of Justice*, 833 F. Supp. 2d 106, 108-09 (D.D.C. 2012).  The D.C. Circuit has not resolved this discrepancy.  *See Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 746 F.3d 1082, 1102 (D.C. Cir. 2014).  However, this court does not need to decide the issue, because at oral argument, counsel for USCIS conceded that risk of circumvention of the law is a necessary showing for both categories of Exemption 7(E) records.  (Transcript of July 28, 2015 Motions Hearing  at 14).  Therefore, the court will assume that USCIS must show a risk of circumvention of the law for all its Exemption 7(E) withholdings.

The parties also dispute whether USCIS is subject to a heightened standard of review for Exemption 7 purposes because it is not a traditional law enforcement agency.  Plaintiff cites a line of cases which hold that courts should use "more exacting scrutiny of Exemption 7 claims by agencies whose principal function is not law enforcement."  *Pratt v. Webster*, 673 F.2d 408, 416 (D.C. Cir. 1982).  Defendant responds that it is the purpose of the records, not the role of the agency, that is determinative, because Exemption 7(E) "mak[es] no reference to, distinction

between, or limitation on the sort of agency currently in custody of the document." *Mezerhane de Schnapp v. United States Citizenship & Immigration Servs.*, 67 F. Supp. 3d 95, 101 (D.D.C. 2014). The court will not dwell on these distinctions, because both parties are correct—while USCIS is right that the analysis is grounded in the purpose of the document at issue, not the nature of the agency, ACLU is also correct that, as the D.C. Circuit explained in *Pratt,* for mixed-function agencies—*i.e.*, agencies whose functions include some law enforcement and some non-law enforcement duties— "a court must scrutinize with some skepticism the particular purpose claimed for disputed documents redacted under FOIA Exemption 7." *Pratt*, 673 F.2d at 418.

ACLU argues that as a mixed-function agency, USCIS has failed to meet its burden because it has not shown that it compiled the withheld documents for law enforcement purposes. It further asserts that the CARPP is an administrative program concerned with the processing and dispensation of immigration benefits, and is unrelated to the enforcement of law for Exemption 7 purposes.

While USCIS as a whole may primarily engage in civil administration and not law enforcement, based on the agency's declarations, it appears that in this particular context national security concerns play an important role in the agency's policies and procedures. This Circuit has held that national security is within the realm of law enforcement purposes sufficient to justify withholding based on Exemption 7. *See Strang v. U.S. Arms Control & Disarmament Agency*, 864 F.2d 859, 862 (D.C. Cir. 1989) ("we do not interpret 'law enforcement' as limited to *criminal* law enforcement, as Strang would have us do; rather, we read the term as encompassing the enforcement of national security laws as well."); *Pratt v. Webster*, 673 F.2d 408, 420 (D.C. Cir. 1982) ("the agency's investigatory activities that give rise to the documents sought must be

7

related to the enforcement of federal laws or to the maintenance of national security"). This is not to say that USCIS has shown that all the withheld documents were compiled for law enforcement purposes (it has not), but that USCIS can invoke Exemption 7(E) even if it does not engage in traditional "law enforcement" activities.

ACLU also argues that *Pratt* requires that a record must be related to a specific law enforcement investigation to qualify for withholding under Exemption 7(E), and USCIS has not tied any of the withheld documents to a law enforcement investigation of a particular incident or individual. This argument is misplaced. In *Pratt*, the D.C. Circuit set forth a two-part test for establishing that documents were compiled for law enforcement purposes. The first step requires the agency to "identify a particular individual or a particular incident as the object of its investigation and the connection between that individual or incident and a possible security risk or violation of federal law." *Pratt v. Webster*, 673 F.2d 408, 420 (D.C. Cir. 1982); *see also Jefferson v. Dep't of Justice, Office of Prof'l Responsibility*, 284 F.3d 172, 176-77 (D.C. Cir. 2002). However, the D.C. Circuit later explained that an amendment to the language of Exemption 7 expanded its scope beyond investigatory records. Where Exemption 7 originally read "investigatory records compiled for law enforcement purposes", it now reads "records or information compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). "It is clear that, under the amended threshold of Exemption 7, an agency may seek to block the disclosure of internal agency materials relating to guidelines, techniques, sources, and procedures for law enforcement investigations and prosecutions, even when the materials have not been compiled in the course of a specific investigation . . . The amended threshold to Exemption 7 'resolve[s] any doubt that law enforcement manuals and other non-investigatory materials can be withheld under (b)(7) if they were compiled for law enforcement purposes and their disclosure would result in

one of the six recognized harms to law enforcement interests set forth in the subparagraphs of the exemption.'" *Tax Analysts v. I.R.S.*, 294 F.3d 71, 79 (D.C. Cir. 2002) (citations omitted).  In *Tax Analysts*, the court explained that *Pratt* is still applicable in cases where the records are tied to a particular investigation, but that is no longer a threshold requirement for Exemption 7. Therefore, the fact that some or all of USCIS's withholdings are not tied to a particular investigation is not dispositive here.

The court now considers the actual substance of the agency's Exemption 7(E) withholdings.  ACLU faults the agency on two main grounds:  that it has not provided enough information to show that the records were created for law enforcement purposes, and that it has not provided enough information to show that release of the records would risk circumvention of the law.  As explained above, USCIS can satisfy the law enforcement purposes test by invoking national security concerns, but the court (as is required for mixed-function agencies) analyzes those claims with some skepticism.  As for risk of circumvention of the law, the D.C. Circuit has explained that "the exemption looks not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk . . . Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law."  *Mayer Brown LLP v. IRS,* 562 F.3d 1190, 1193-94 (D.C. Cir. 2009) (internal quotation marks and alterations omitted).

USCIS's amended *Vaughn* index is exemplary in some respects, and utterly lacking in others.  To the agency's credit, it is clear, based on the *Vaughn* index, that it completed a thorough review of the records.  It has provided the court in most instances with ample detail regarding the nature of the techniques, procedures, and guidelines withheld.  This is therefore not like the case in *Dent v. EOUSA*, 926 F. Supp. 2d 257 (D.D.C. 2013), where the court faulted the agency for not providing enough information about the substance of the records withheld.  *See id.* at 272-73 ("FBI cannot rely upon the vaguely worded categorical description it has provided, and must instead provide evidence from which the Court can deduce something of the nature of the techniques in question.").

However, while USCIS has adequately described the substance of the records in question, it has offered in many instances, vague and conclusory explanations why those records should be withheld pursuant to Exemption 7(E).  For most of its *Vaughn* index entries, USCIS engages in a lengthy discussion of the nature of the records, but merely states without explanation that that the records were "complied for law enforcement purposes related to processing cases involving potential [national security] concerns" and then states in conclusory fashion that "[i]f released, this information would disclose techniques and procedures for law enforcement investigations and could reasonably be expected to risk circumvention of the law by future applicants."  (*See, e.g.*, amended *Vaughn* Index p. 1).  There is no explanation of how the information, if released, could risk circumvention of the law, no explanation of what laws would purportedly be circumvented, and little detail regarding what law enforcement purpose is involved (other than vague references to "national security concerns").  This is not enough to justify withholding records under the FOIA.  *See Strunk v. U.S. Dep't of State*, 845 F. Supp. 2d 38, 47 (D.D.C. 2012) ("FOIA demands 'a relatively detailed justification, specifically identifying the reasons why a

particular exemption is relevant and correlating those claims with the particular part of a

withheld document to which they apply.' CBP's submissions offer too little detail to allow this

Court to undertake a meaningful assessment of the redacted material.") (citation omitted).  For

some entries, USCIS does not even recite the statutory language, and instead merely invokes

Exemption 7(E) without explanation.[2]  Oher entries appear to have no explanation at all.  (*See*

Amended *Vaughn* Index at pp. 30-33) (no references to Bates pages 603, 652-59, 726, 768-771,

774, 800-804, 831, 834-58).

This lack of explanation is particularly puzzling given that some entries in the *Vaughn*

index do provide sufficient information to justify USCIS's withholdings.  For example, USCIS

provided the following explanation for withheld pages 315-17:

> Exemption (b)(7)(E): The memorandum was compiled for law enforcement purposes and
> contains information and procedures related to processing cases involving potential
> national security concerns. Specifically, the memorandum reveals the points in the
> process that immigration officers try to identify a national security concern, and the
> methods used to identify the concern, including the background check databases searched
> and other sources used to obtain information. Further, the memorandum provides
> guidance on who to contact for further vetting and security checks once they have
> identified a national security concern. If disclosed, this information would disclose
> techniques and procedures for law enforcement investigations that could reasonably be
> expected to risk circumvention of the law, by providing enough information to allow an
> applicant to ascertain the type of national security concern that the officer has identified,
> and how to avoid certain words or behaviors that assist USCIS officers in identifying a
> potential national security concern.

(Amended *Vaughn* Index p. 12).  Unlike many of its entries, here USCIS adequately explains

what national security purposes were involved in the creation of the record, and how its release

could risk circumvention of the law.  This entry (and the others like it) are adequate for

---

[2] *See, e.g.,* Amended Vaughn Index at p. 10, entry 2 ("This interoffice memorandum dated May 24, 2007, is titled 'Processing the Discretionary Exemption to the Inadmissibility Ground for Providing Material Support to Certain Terrorist Organizations.' This memorandum was issued to USCIS's Associate Directors, Chief Counsel and the Chief of Administrative Appeals by USCIS's Deputy Director, and outlines instructions for adjudicating those applications for immigration benefits filed with USCIS where an applicant is found to be inadmissible or otherwise barred from an immigration benefit for having provided material support to a terrorist organization. The memorandum was partially withheld pursuant to Exemption (b)(7)(E).")

Exemption 7(E) purposes. *See Blackwell v. F.B.I.*, 646 F.3d 37, 41-42 (D.C. Cir. 2011) (finding explanations adequate where declarant explained that "[t]he release of specifics of these investigative techniques would risk circumvention of the law by individuals who seek to utilize computers in violation of laws. By releasing that information, the FBI would be exposing computer forensic vulnerabilities to potential criminals," and disclosure of reports "could enable criminals to employ countermeasures to avoid detection, thus jeopardizing the FBI's investigatory missions.") (internal quotation marks and citations omitted).

Based on its review of the amended *Vaughn* index, the court grants summary judgment to USCIS with respect to the following withheld pages, which it finds adequately describe both the law enforcement purpose at issue and the risk of circumvention of the law: pages 241-242, 315-17, 319-30, 526-27, 544-547, 548-549, 550-556, 562, 564, 567-574, 582, 584-589, 881, 891, 919, 932, 951-952, 965-966, 979-980, 984-987, 989-998, 1000-1024, 1060-1066, and 1294. The court will also grant summary judgment to USCIS with respect to pages 228, 331-332, 334, 350-352, 366, 369-370, 373-373, 376-379, 382-387, 389, 392, 395-397, 402, 404-405, 406-407, 408, 410, 415-422, 435-438, 441-445, 449-457, 460-462, 464, 466-467, 470-484, 486-494, 496-501, 504, 509, 511, 513, 519-520, 535-543, 590-593, 604, 610-611, 613, 614-624, 650, 663, 1051-1054, 1068-1084, 1138, 1163-1165, and 1167-1170, which describe law enforcement databases, because such information may be routinely withheld. *See Isiwele v. United States Dep't of Health & Human Servs.*, 85 F. Supp. 3d 337, 360 (D.D.C. 2015) ("ICE properly redacted . . . database codes, case numbers, and numeric references, specifically from TECS, under FOIA 7(E).") (internal quotations omitted); *Gosen v. United States Citizenship & Immigration Servs.*, 75 F. Supp. 3d 279, 290 (D.D.C. 2014) ("Indeed, many courts have upheld the government's withholding of the same sort of information from the same databases that are at issue in this

case."). The remaining pages are either lacking specificity with respect to the law enforcement purpose at issue (*see, e.g.,* entry for page 1294), the risk of circumvention of the law (*see, e.g.,* entry for page 1145), or both.  Summary judgment is denied with respect to those withholdings.

The court does not mean to suggest that it will take an overly formalistic view of USCIS's explanations for its withholdings if and when USCIS submits revised declarations and a revised *Vaughn* index.  Indeed, the D.C. Circuit has explained that in some circumstances – such as the law enforcement databases described above -- the basis for an Exemption 7(E) withholding can be self-evident even where the agency does not mirror the statutory language. *See Morley v. C.I.A.*, 508 F.3d 1108, 1129 (D.C. Cir. 2007) ("It is self-evident that information revealing security clearance procedures could render those procedures vulnerable and weaken their effectiveness at uncovering background information on potential candidates.  Agencies must apply the correct standards when claiming FOIA exemptions, but they need not parrot the statutory language in doing so.").  In *Morley*, however, the CIA withheld documents related to background investigations of prospective employees, which the court held "inherently relate to law enforcement" and were well within Exemption 7(E)'s purview.  *Morley v. C.I.A.*, 508 F.3d 1108, 1129 (D.C. Cir. 2007).  Given the  fact that USCIS is a mixed-function agency (requiring this court to view its withholdings with some skepticism), and  the documents relate primarily to immigration benefits processing, not law enforcement in the traditional sense, the court is less willing to give USCIS the same benefit of the doubt as the court gave the CIA in *Morley*.  USCIS is not required to adhere to a rigid formula to satisfy its burden, but for the withholdings that remain outstanding, it must provide the court with additional explanation justifying its invocation of Exemption 7(E).[3]

---

[3] At oral argument, counsel for USCIS intimated that providing additional information in the *Vaughn* index might be untenable because it would reveal the very information USCIS sought to withhold.  While the court is somewhat

b.  <u>Adequacy of the Search</u>

ACLU originally challenged the adequacy of USCIS's search in light of its failure to produce a "CARPP Manual" and certain monthly reports.  USCIS explained that it had produced the CARPP Manual, but because it had a different name, ACLU did not know that it had been produced.  This issue is therefore moot.  As for the monthly reports, ACLU argues that some of the reports are still missing, and that the number of times USCIS has had to conduct supplemental searches is evidence that its search was inadequate.

In ruling on the adequacy of an agency's search in response to a FOIA request, "[t]he question is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate.* The adequacy of the search, in turn, is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case.  In demonstrating the adequacy of the search, the agency may rely upon reasonably detailed, nonconclusory affidavits submitted in good faith." *Steinberg v. DOJ*, 23 F.3d 548, 551 (D.C. Cir. 1994) (internal quotation marks and citations omitted).  An agency may prove the reasonableness of its search via the declaration of a responsible agency official, so long as the declaration is reasonably detailed and not controverted by contrary evidence or evidence of bad faith.  *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).  There is no requirement that an agency search every record system, but the agency must conduct a good faith, reasonable search of those records systems likely to possess the requested information. *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  The agency declaration can

---

puzzled by this explanation given USCIS's ability to provide adequate descriptions for some of the withheld documents, if upon further review USCIS believes it can only provide additional information *in camera*, it may move the court for leave to file an *in camera Vaughn* index, but must show that it has met its burden in making such a request.  *See, e.g., Wolfe v. Dep't of Health & Human Servs.*, 839 F.2d 768, 771 n.3 (D.C. Cir. 1988); *Yeager v. Drug Enforcement Admin.*, 678 F.2d 315, 325 (D.C. Cir. 1982).

demonstrate reasonableness by "setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Sanders v. Obama*, 729 F. Supp. 2d 148, 155 (D.D.C. 2010), *aff'd sub nom. Sanders v. DOJ*, 10-5273, 2011 WL 1769099 (D.C. Cir. Apr. 21, 2011) (citation omitted). Once an agency has provided adequate affidavits, the burden reverts to the plaintiff to demonstrate the lack of a good faith search. *Id.* The presumption of good faith "cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks omitted).

USCIS's declarations here include enough information about the search for the court to find that it was adequate. (*See* Eggleston Decl. ¶¶ 37-39, Kendall Decl.). ACLU requested the number of immigration benefit applications involving known or suspected terrorists for the years 2008-2012, and it appears that USCIS produced this information for each year during that time period. (Kendall Decl. ¶ 17(c)). Given that ACLU did not ask for monthly statistics, it is not clear why USCIS's failure to provide such statistics is relevant, since USCIS otherwise adequately responded to the request. In any event, USCIS explained in its submissions and at oral argument that the monthly reports at issue were not always generated systematically. USCIS officials chose to generate reports from an underlying data set, sometimes monthly, sometimes quarterly, and perhaps sometimes not at all. There was not a consistent method to generating the reports from 2008-2012, and no central database where USCIS officials necessarily saved the reports they generated. (Kendall Decl. ¶ 19; Def. Opp'n. at 4-6.) Therefore, USCIS explained that it searched for whatever reports existed, and to the extent a particular month or quarter is not represented, a report may not have ever been made for that time period or USCIS may no longer have a copy of it. This is enough to demonstrate the

reasonableness of USCIS's search, and ACLU's assertion that some reports remain missing is not enough to overcome the good faith presumption afforded to USCIS. *See Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) ("it is long settled that the failure of an agency to turn up one specific document in its search does not alone render a search inadequate . . . After all, particular documents may have been accidentally lost or destroyed, or a reasonable and thorough search may have missed them."). Because the court is satisfied that USCIS has provided the court with an explanation of the reports' whereabouts (or lack thereof), it grants summary judgment to USCIS on the adequacy of the search.

      c.  <u>Scope of the Search</u>

ACLU challenges the scope of USCIS's search with respect to two groups of documents: page 550 and pages 565-66, 575, and 584. For both, ACLU argues that USCIS impermissibly deemed certain parts of the records "out of scope," and therefore redacted the records without processing them and relying on an exemption.

Page 550 is part of a training manual. USCIS claims that the portions it deemed out of scope have nothing to do with national security. ACLU argues that USCIS has not offered any explanation as to how it determined that some parts of the training manual related to national security and others did not. USCIS explains that the training manual "covers a variety of issues related to the adjudication of asylum applications, some of which relate to CARRP and national security matters, and some that do not . . . The information that was determined to be out of scope related solely to the adjudication of asylum applications. Here, on Bates Page 550, the out of scope information related to potential bars to asylum that do not relate to CARRP or national security concerns, and as such, was not processed." (Def. Opp'n 10). This explanation is borne

out by the document itself.[4]  The top of the page is redacted as out-of-scope.  Underneath that

redaction there is a heading titled "Indicators of Possible National Security Risk."  It is logical to

assume that whatever may have been above that heading did not relate to indicators of possible

national security risk, which is the subject of ACLU's FOIA request.  The court therefore accepts

the agency's explanation for why the information on page 550 was out of scope.

      USCIS's explanation for the other pages does not fare as well.  USCIS explains that

"[t]hese pages were part of a large training module . . . While the title of the module relates to

National Security, portions of the material pertains solely to the adjudication of asylum and

refugee applications, and is not related to national security or the CARRP process . . . [USCIS]

determined that some of the materials related to Terrorist-Related Inadmissibility Grounds

(TRIG) may potentially relate to national security issues, and in those cases, USCIS processed

the materials.  However, USCIS did not process any information regarding the TRIG process that

was unrelated to the subject of Plaintiff's requests and instead related solely to general

adjudication information or processing guidance."  (Def. Opp'n 11).  For pages 565-66, USCIS

claims that "portions of a table of contents were determined to be out of scope because they

consisted of asylum and refugee adjudication information relating to USCIS's Terrorist-Related

Inadmissibility Grounds (TRIG) process, which is a separate process from the CARRP process."

(*Id.*)  And for pages 575 and 584, USCIS claims that they include "information related to the

TRIG process in the context of general processing guidance, and did not relate to the CARRP

process or national security concerns."  (*Id.*).

      USCIS's arguments with respect to these pages are contradicted on numerous levels.

First, it strains credulity to assert that "Terrorism-Related Inadmissibility Grounds" are unrelated

---

[4] The parties provided the court with copies of the "out of scope" pages at oral argument.

to national security concerns.  Second, ACLU's request was not solely limited to the CARRP

process, but also sought records related to national security indicators more generally.  (*See, e.g.*,

Eggleston Decl. Ex. A p. 3 at ¶ 3).  Lastly, USCIS appears to have processed other records

relating to TRIG that contain no reference to CARRP without deeming them out of scope.  (*See*

Amended *Vaughn* Index at pp. 5-6 (processing "TRIG Instructor Guide")).  Because USCIS has

not adequately explained why these pages related to TRIG are "clearly and without any doubt

unrelated to the subject of the request," it must process them as responsive to ACLU's FOIA

request and either release them or claim an appropriate exemption. *Am. Immigration Lawyers

Ass'n v. Executive Office for Immigration Review*, No. 13-840, 2015 WL 3875801, at *1 (D.D.C.

June 23, 2015) (internal citation and quotations omitted).

> d.  Segregability

FOIA requires an agency to produce "any reasonably segregable portion" of a record that

is not exempt from disclosure, 5 U.S.C. § 552(b), and the court must affirmatively determine

whether the agency has done so.  ACLU alleges that USCIS's segregability determinations do

not explain with reasonable specificity why documents withheld pursuant to Exemption 7(E)

cannot be further segregated.  ACLU argues that USCIS has offered only conclusory statements

as to segregability, and therefore has not provided ACLU and the court with enough information

to reasonably determine whether USCIS adequately segregated the exempt and non-exempt

portions of the records.

The court will withhold ruling on the agency's segregability determinations with respect

to the entries it found lacking under Exemption 7(E).  Because the court denies summary

judgment with respect to those entries (meaning the agency will have to either reconsider those

entries or release them), it would serve no purpose to rule on segregability where the determinations may change.

With respect to the entries the court found sufficient under Exemption 7(E), ACLU challenges two of the three entries (pages 319-30 and 526-27) as lacking specificity. For both, USCIS certified that it released all segregable, non-exempt material, and provides examples of how it differentiated between exempt and non-exempt information. *See* Amended *Vaughn* Index p. 14 ("Examples of this non-exempt and released material include a partial summary of the memorandum, a listing of some of the background check requirements and implementation instructions); p. 23 ("All information on the first page, p. 525, was released. Non-exempt and released material on pp. 526-527 included the headers and footers, as it was deemed non-exempt"). It appears that the agency carefully reviewed each page and separated exempt and non-exempt material, and the court does not find its explanations lacking in specificity. Therefore, summary judgment for USCIS is granted with respect to these two entries.

## IV.    CONCLUSION

For the foregoing reasons, USCIS's motion for summary judgment is granted with respect to the adequacy of the search, granted in part and denied in part with respect to the scope of the search, granted in part with respect to segregability, and granted in part and denied in part with respect to withholdings under Exemption 7(E) as described above. ACLU's motion for summary judgment is similarly granted in part and denied in part. An appropriate Order accompanies this Memorandum Opinion.

Date:  September 30, 2015


_Tanya S. Chutkan_
TANYA S. CHUTKAN
United States District Judge